IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J.P. WASHINGTON, ID # 1163427, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:05-CV-1932-N (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his Dallas County conviction for possession of a controlled substance in Cause No. F02-53827-W. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B. Procedural and Factual History

On March 25, 2003, petitioner's jury trial for possession of a controlled substance commenced. Rep.'s R., Vol. II at 1 [hereinafter cited as RR-volume # at page]. At 10:48 a.m. on March 27, 2003, the jury departed the courtroom to begin deliberations regarding the guilt or innocence of petitioner. RR-IV at 55. At 3:54 p.m., the jury returned to the courtroom after giving written

notification to the trial court that "We, the jury, are deadlocked with no indication that will change." *Id.* at 56-57.  The jury foreman orally indicated that there was a 10-2 split and that he did not believe that further deliberation "might result in some movement among [the] jurors." *Id.* at 57. When the court asked the entire jury panel whether any of them believed that "further deliberation could result in movement", no juror indicated such belief.  *Id.*  The court, nevertheless, gave the jury an additional written instruction and orally directed them "to continue your deliberations, at least for awhile" and to inform the court if they remained deadlocked.  *Id.* at 58.  At 4:31 p.m. the jury returned to the courtroom after sending a note to the court that the jury wanted to review certain testimony or evidence.  *Id.* at 60.  The court recessed the jury until 9:00 a.m. the next day so that the requested testimony could be located by the court reporter.  *Id.* at 60-62.

At 9:08 a.m. on March 28, 2003, the court reconvened.  *See* TR[1] at 6 (Trial Docket sheet). At 11:01 a.m., the jury returned from their deliberations and delivered a signed verdict form to the presiding judge which indicated a verdict of guilty.  RR-V at 4.  After reading the verdict in open court, the court asked the jury foreman:  "Is that the verdict of you and all your fellow lower jurors?" *Id.*  After the foreman responded "Yes, sir", the court stated:  "Members of the jury, may I see by a show of hand or hands the hand of any juror whose verdict that is not?  Anyone disagree with what I just read, please raise your hand."  *Id.*  Upon seeing no raised hand, the court stated:  "Record does need to reflect no hand has been raised."  *Id.* at 5.  The court then asked counsel whether anyone wished to further poll the jury, and both prosecutor and defense counsel affirmatively indicated that they did not wish additional polling.  *Id.*  The court thus accepted the verdict and discharged the

---

[1]  "TR" refers to the trial records in Cause No. F02-53827-MW.

jury.  *Id.*  The court thereafter considered evidence offered at sentencing, and sentenced petitioner to thirty-five years imprisonment. *Id.* at 20.

On April 24, 2003, petitioner filed a motion for new trial wherein he alleged among other things that the verdict did not represent the unanimous expression of all jurors.  TR at 39 (Mot. for New Trial).  To support such allegation he provided an affidavit from juror Shanta Green in which she avers among other things that she was "too upset to speak up" when the trial court polled the jury and that the bailiff had "physically returned" a different juror (Ms. Smith) to the jury room after Ms. Smith had left the deliberations.  *Id.* at 60-61.

On June 19, 2003, a judge different from the one that conducted the trial conducted a hearing on petitioner's motion for new trial.  *See* Rep.'s R. (Mot. New Trial) at 1.  Defense counsel presented his motion and raised three grounds for a new trial – only one of which is relevant to this § 2254 habeas petition – a claim that Juror Green had filed an affidavit in which she indicated that she was not present for the final vote, she never voted guilty, and she was too emotional to respond to the judge's inquiry of the jury panel as a whole.  *Id.* at 4.  The prosecutor argued that, in light of the way the trial judge handled the taking of the verdict, he did not believe that Juror Green disagreed with the verdict.  *Id.* at 8-9.  The court denied the motion.  *Id.* at 12.

Petitioner raised two grounds for appellate review:  (1) an alleged violation of his right to a unanimous verdict and (2) alleged juror misconduct when the jury foreman falsely reported that the jury had reached a unanimous verdict.  *See* App.'s Brief at 2.  On February 5, 2004, the court of appeals noted that petitioner supported his appellate claims with Green's affidavit, held that Tex. R. Evid. 606(b) precluded use of such affidavit to challenge the validity of the verdict, and affirmed

the conviction. *Washington v. State*, No. 11-03-00153-CR, 2004 WL 212851, at *1-2 (Tex. App. – Eastland Feb. 5, 2004, pet. ref'd).

On October 4, 2004, petitioner filed a state application for writ of habeas corpus to challenge his conviction. *See* S.H. Tr.[2] at 2. To support his habeas challenge, petitioner submitted Green's affidavit and an unsigned affidavit purportedly from Juror Smith. *See id.* at 51-56. On July 13, 2005, the Texas Court of Criminal Appeals denied the state application without written order. *Ex parte Washington*, No. 53,266-02, slip op. at 1 (Tex. Crim. App. July 13, 2005).

On September 28, 2005, this Court received petitioner's original federal petition to challenge his conviction. (*See* Mot. for Leave with attached Pet. Writ of Habeas Corpus (Pet.).) He provided the affidavits from Green and Smith (still unsigned) to support his federal habeas challenge. (*See* Ex. 1A and 2A attached to Pet.) Respondent thereafter filed an answer and provided state-court records. (*See* Answer.) Petitioner subsequently filed a response to that answer, (*see* Petr.'s Resp. [hereinafter Reply]), and moved to file an amended petition. Contemporaneously with this recommendation, the Court has granted petitioner leave to file his amended petition and found no need for ordering a further answer because petitioner merely sought to delete claims from his original petition. The Court thus considers the amended petition and the original answer to state the relevant positions of the parties on the various issues raised by petitioner.

## C.  Substantive Issues

In his amended petition and supporting memorandum, petitioner asserts that he is being held unlawfully because (1) the bailiff engaged in misconduct by improperly communicating and phys-

---

[2] "S.H. Tr" denotes the state habeas records attached to *Ex parte Washington*, No. 53,266-02, slip op. (Tex. Crim. App. July 13, 2005).

ically contacting Juror Smith; (2) the prosecutor engaged in misconduct by knowingly suborning

perjured testimony and not correcting it; (3) the prosecutor was not mentally competent to practice

law because he suffered from a mental illness; (4) his trial attorney rendered ineffective assistance

of counsel when he failed to poll the jury after Juror Green became emotional upon announcement

of the verdict; and (5) the jury foreman engaged in misconduct by falsely reporting a unanimous

verdict.  (Am. Pet. at 7-8; Am. Supp. Mem. at 1-17.)

## D.  Procedural Issues

Respondent contends that petitioner has not sufficiently exhausted his state remedies with

respect to Claim 5, and that such claim should be deemed procedurally barred from federal habeas

review.[3]  Petitioner asserts that he raised Claim 5 on direct appeal and in his petition for

discretionary review.  (Am. Supp. Mem. at 16-17.)

Although the Court agrees that petitioner raised at least part of his Claim 5 on direct appeal

and in his petition for discretionary review, it also appears that the claim herein is broader than the

claim raised on appeal.  Nevertheless, because it appears that petitioner is entitled to no habeas relief

on the allegedly unexhausted claim, the Court bypasses the procedural bar issue and considers the

merits of that claim.  *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas

petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming

pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion

in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better

served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v.*

---

[3] Although respondent also argues that other claims were not exhausted, petitioner has deleted them from his amended petition.

*Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

Respondent also argues that this Court cannot consider the juror affidavits submitted by petitioner to support his federal claims. He argues that the lack of signature and notarization on Smith's affidavit precludes its consideration. He further argues that this Court cannot consider either affidavit because the state courts found that Tex. R. Evid. 606(b) precluded consideration of the affidavits at the state level, and that such finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). He lastly argues that this Court cannot consider either affidavit due to Fed. R. Evid. 606(b).

The affidavit from Ms. Smith is not signed or properly verified. The Court thus finds that it provides no competent support for petitioner's federal habeas application. The Court further finds that the state court finding regarding the preclusive effect of Tex. R. Evid. 606(b) is not a finding of fact that is entitled to a presumption of correctness under § 2254(e)(1), but rather, a legal conclusion. However, the state finding does have some implicit underlying findings of fact, such as the fact that Shanta Green was a juror in the state criminal case involving petitioner, that entitled to the presumption of correctness.[4]

Rule 1101(e) of the Federal Rules of Evidence specifically provides that the federal evidentiary rules are applicable in part to "habeas corpus under sections 2241-2254 of title 28, United States Code." More specifically, the rules apply in § 2254 actions "to the extent that matters of evidence are not provided for in the statutes which govern procedure therein or in other rules prescribed by the Supreme Court pursuant to statutory authority." Sections 2245, 2246, and 2247 of Title 28 of the United States Code provide statutory evidentiary authority with respect to federal

---

[4] The Court further addresses the presumption of correctness in the next section.

habeas applications.[5] Section 2246 provides specific statutory discretionary authority for the habeas court to accept affidavit evidence. Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts likewise provides discretionary authority for the habeas court to accept affidavit evidence.

In a context similar to the one now before the Court, the Fifth Circuit recognized the general applicability of the Federal Rules of Evidence to § 2254 proceedings but focused on Tex. R. Evid. 606(b) because the reviewed "state court decision . . . relied upon that rule in its adjudication of [the petitioner's] claim, and because the district court neither held an evidentiary hearing nor received affidavits not in the state court record." *Salazar v. Dretke*, 419 F.3d 384, 400 n.28 (5th Cir. 2005), *cert. denied*, 126 Ct. 1467 (2006). In light of *Salazar*, it is clear that some form of Rule 606(b) applies to the consideration given to the affidavit of Juror Green. In this case, the court of appeals certainly relied upon Rule 606(b) to affirm petitioner's conviction. *See Washington v. State*, No. 11-03-00153-CR, 2004 WL 212851, at *1-2 (Tex. App. – Eastland Feb. 5, 2004, pet. ref'd). On the other hand, the Court of Criminal Appeals did not specifically rely on Rule 606(b) to adjudicate the claims raised separately through the state habeas process. Because the affidavit of Juror Green makes no ultimate difference to the resolution of this action, the Court proceeds as though the affidavit is properly considered by this Court.[6]

---

[5] Section 2245 provides that a certificate of the presiding judge, "setting forth the facts occurring at the trial, shall be admissible in evidence." Section 2246 provides that evidence provided in a habeas action "may be taken orally or by deposition, or, in the discretion of the judge, by affidavit." Section 2247 provides that guidance with respect to documentary evidence in a federal habeas proceeding, and provides: "On application for a writ of habeas corpus documentary evidence, transcripts of proceedings upon arraignment, plea and sentence and a transcript of the oral testimony introduced on any previous similar application by or in behalf of the same petitioner, shall be admissible in evidence."

[6] The Fifth Circuit has recognized an exception to the general principle embodied in Fed. R. Evid 606(b) "that juror testimony may not impeach a verdict in cases like that presently before us: 'An affidavit of a juror is admissible to show that the verdict delivered was not that actually agreed upon . . . but a juror may not subsequently impeach a verdict by stating how it was reached.'" *United States v. Dotson*, 817 F.2d 1127, 1130 (5th Cir. 1987) (citation omitted), *aff'd in pertinent part on reh'g*, 821 F.2d 1034 (5th Cir. 1987).

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Court of Criminal Appeals in such writ. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits); *Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999) (construing the statement, "Application denied without written order," as a rejection of the claims on the merits). Furthermore, because the court of appeals made no procedural ruling in which it dismissed petitioner's appellate claims as improperly before it, the appellate decision was an adjudication on the merits. *See Salazar v. Dretke*, 419 F.3d 384, 397-98 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1467 (2006). As was the case in *Salazar*, the state court in this case made "a substantive determination" that the asserted claims were "unsupported by any evidence" and thus provided no basis to reverse

his conviction.  The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to the claims raised in petitioner's amended petition.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Petitioner relies upon pre-AEDPA case law for arguing that this Court should afford no presumption of correctness to the findings of the state courts because he only received a "paper hearing" in state court and because the judge who handled his state habeas application differed from the one

9

who presided over his trial.  (Am. Supp. Mem. at 4-5.)  This Court has previously rejected similar arguments.  *See Morrow v. Johnson*, No. 3:00-CV-2009-L, unpub. recommendation at 15-16 (N.D. Tex. Apr. 9, 2002) (findings, conclusions, and recommendation of magistrate judge), *accepted by* unpub. order (N.D. Tex. Dec. 30, 2002) *and aff'd*, 367 F.3d 309 (5th Cir. 2004).  As previously stated by this Court, *Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001) easily disposes of petitioner's arguments.  *See id.* at 16.  "In *Valdez*, the Fifth Circuit held that in cases governed by the AEDPA, a full and fair hearing at the state court level is no longer a 'prerequisite to operation of AEDPA's deferential framework' as it was under pre-AEDPA standards."  *Id.* (quoting *Valdez*, 274 F.3d at 948).  In denying a request for a Certificate of Appealability for a "claim that the federal district court erred in applying a presumption of correctness to the state habeas findings because they rested on the papers filed and not on testimony at an evidentiary hearing", the Fifth Circuit stated:

> The presumption of correctness under AEDPA is accorded adjudications by state courts.  If the state has rejected a petitioner's habeas claim on its merits, it has adjudicated the claim.  The AEDPA requires that we presume correct the state court's findings of fact unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  This is so even if the hearing was a "paper" hearing and may not have been full and fair.

*Morrow*, 367 F.3d at 315 (footnotes and citations omitted).  *Morrow* and *Valdez* foreclose petitioner's arguments regarding the inapplicability of the presumption of correctness.

With the AEDPA standards in mind, the Court proceeds to address petitioner's claims in the order presented to it.

### III.  BAILIFF MISCONDUCT

In his first claim, petitioner argues that the bailiff handling the jury during his criminal trial engaged in misconduct by improperly contacting and communicating with Juror Smith during deliberations.  (Am. Pet. at 7.)  He further argues that *Remmer v. United States*, 347 U.S. 227 (1954) requires that he be given an opportunity to prove this claim, and that prejudice is presumed.  (Am. Supp. Mem. at 1-5.)

Petitioner raised this claim in his state application for writ of habeas corpus. *See* S.H. Tr. at 9, 28-31. He therein argued that the bailiff engaged in misconduct by "[p]hysically removing a Juror from the bathroom after she had reported to the Court Official why she refused to leave the bathroom."[7] *Id.* at 28. He argued that the bailiff in effect assaulted the juror and thus tainted the juror and the resulting verdict. *Id.* at 28-30. By denying the state application without written order, the Court of Criminal Appeals adjudicated the claim on the merits.

In *Remmer*, the defendant filed a motion for new trial and requested a hearing thereon based upon an allegation of jury tampering. *See* 347 U.S. at 228-29. The district court denied the motion without a hearing, and the court of appeals found no abuse of discretion in that decision because the petitioner had shown no prejudice. *Id.* at 229. The Supreme Court thereafter specifically stated:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

347 U.S. at 229. Because the district court had not conducted a hearing on the motion for new trial, the Supreme Court vacated the appellate judgment and "remand[ed] the case to the District Court with directions to hold a hearing to determine whether the incident complained of was harmful to the petitioner, and if after hearing it is found to have been harmful, to grant a new trial." *Id.* at 230. Although *Remmer* certainly recognizes a rebuttable presumption, the Fifth Circuit has specifically recognized that the presumption of prejudice aspect of *Remmer* has not survived *Smith v. Phillips*, 455 U.S. 209 (1982) and *United States v. Olano*, 507 U.S. 725 (1993) except in the narrow range of cases of implied bias by a juror. *See Brooks v. Dretke*, 418 F.3d 430, 434 (5th Cir. 2005) (addressing implied bias); *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir. 1998) (not mentioning implied bias).

---

[7] Petitioner also alleged in his state habeas application that the bailiff engaged in misconduct by failing to inform the trial court of juror misconduct reported to him. S.H. Tr. at 28. Petitioner does not pursue that claim in this federal action.

11

Petitioner in this case filed a motion for new trial wherein he alleged jury and prosecutorial misconduct, and relied on Green's affidavit to support the motion.  TR at 39.  Green averred in that affidavit: "At one point, Ms. Smith was trying to maintain her position, and she left the jury room. She had to be physically returned by the bailiff."  *Id.* at 61.  The trial court held a hearing on the motion for new trial, heard argument from both sides, and overruled the motion.  *See* Rep.'s R. (Mot. New Trial) at 1-12.  With respect to the submitted affidavit, defense counsel merely argued that Juror Green was not present for the final vote, never voted guilty, and was simply too emotional to respond to the trial court's request for a show of hands regarding whether the verdict was each of the jurors.  *Id.* at 4.  The prosecutor merely argued that he did not believe that Juror Green did not agree with the verdict in light of the trial court's poll.  *Id.* at 8-9.

Because petitioner's claim presents no issue of implied bias by a juror, the burden of showing prejudice from the alleged actions of the bailiff remained at all times with him.  The trial court, furthermore, conducted a hearing on his motion for new trial, and gave defense counsel an opportunity to present petitioner's arguments for a new trial.  Despite that opportunity and possessing a juror affidavit which indicates that the bailiff physically returned a juror to the jury room, defense counsel made no argument of bailiff misconduct.  Petitioner was given an opportunity to prove his claim consistent with *Remmer*.  That the state court conducted no evidentiary hearing on this claim when resolving his state habeas application does not violate *Remmer*.

Petitioner, furthermore, provides no support for his claim of bailiff misconduct even if the Court considers the affidavit of Juror Green.  Notably, petitioner does not raise the same arguments of assault as he did in his state habeas application.  In his amended federal petition, he merely characterizes the bailiff's conduct as improper communication and physical contact with Juror Smith. He does not argue assault or stress the physical contact exerted by the bailiff; he instead relies on the *Remmer* presumption to argue that the State has not rebutted his claim of improper contact.  As already determined, however, the *Remmer* argument entitles petitioner to no habeas relief.  The Court now finds that the Green affidavit provides insufficient facts to find misconduct on the part

12

of the bailiff.  The affidavit reveals no specific communication between the bailiff and Juror Smith; he identifies no statement made by the bailiff, whether proper or improper.  Although the affidavit uses the phrase "physically returned", such allegation, without more, provides no definite basis for finding that the bailiff engaged in misconduct.[8]

Taking the facts as alleged as true, the bailiff merely returned a juror to the jury room after she had left deliberations.  Although the role of the bailiff is defined generally under Texas law, *see* Tex. Code Crim. P. art. 36.24 (Vernon 1981) (providing for a bailiff "to attend the wants of the jury and to act under the direction of the court"), bailiffs are charged with overseeing the jury and preventing outside forces from affecting the deliberative process.  Such duties comport with the historical role of the bailiff as more fully defined in the prior version of Article 36.24:

> To supply all the reasonable wants of the jury, and to keep them together and to prevent intercourse with any other person, the sheriff shall see that they are constantly attended by a proper officer, who shall always remain sufficiently near the jury to answer any call made upon him, but shall not be with them while they are discussing the case; nor shall such officer, at any time while the case is on trial before them, converse about the case with any of them, nor in the presence of any of them.

*See id.* (historical note quoting 1965 version of provision).  On the facts alleged (including those in the affidavit), the Court finds no misconduct on the part of the bailiff.  Although the bailiff may have engaged in some communication with Ms. Smith in his effort to reunite the jury, a certain amount of communication is simply part of the administrative duties of the bailiff.  Petitioner has presented no evidence of improper communication or contact by the bailiff which supports habeas relief.

Moreover, the denial of the state habeas application with respect to the bailiff misconduct claim is neither contrary to nor an unreasonable application of clearly established federal law.  The denial of such claim was not based on an unreasonable determination of the facts in light of the evidence presented to the State court.

---

[8]  Interestingly, the purported affidavit from Juror Smith merely states:  "At one point, I was trying to maintain my position, and I left the jury room.  I had to be returned by the bailiff."  S.H. Tr. at 54.  The purported affidavit from the alleged offended juror thus entirely omits the phrase "physically returned".

## IV.  PROSECUTORIAL MISCONDUCT

In his second claim, petitioner contends that the prosecutor engaged in misconduct by knowingly suborning perjured testimony and not correcting it.  (Am. Pet. at 7; Am. Supp. Mem. at 5-10.)  He bases this claim on alleged inconsistencies between the trial testimony of Officer Alfred Schoelen and statements the Officer made in a sworn arrest affidavit, warrant for arrest and detention, and a prosecutor's report.  (Am. Supp. Mem. at 6.)  Petitioner submits that Officer Schoelen testified that he searched petitioner incident to a lawful arrest when the identified documents and testimony from Officer Woods show that Officer Woods searched petitioner.  (*Id.* at 6-7.)

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "forbids the State from knowingly using perjured testimony where there is a reasonable likelihood that such testimony will affect the verdict."  *Knox v. Johnson*, 224 F.3d 470, 482 (5th Cir. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)).  Due process is also violated when the State knowingly offers false testimony to obtain a conviction and fails to correct such testimony. *Thompson v. Cain*, 161 F.3d 802, 808 (5th Cir. 1998) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).

To obtain habeas relief for knowing use of perjured testimony or failing to correct known false testimony, petitioner must show that the testimony was actually false, the prosecutor knew it was false, and the evidence was material.  *See id.* (failing to correct known false testimony); *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994) (suborning perjury).  Evidence is "material" when it is "a highly significant factor reasonably likely to have affected the jury's verdict."  *Blackmon*, 22 F.3d at 565.  As to "reasonable likelihood," the United States Supreme Court has treated this requirement as "synonymous with 'reasonable possibility' and thus ha[s] equated materiality in the perjured-testi-mony cases with a showing that suppression of the evidence was not harmless beyond a reasonable doubt."  *See Strickler v. Greene*, 527 U.S. 263, 299 (1999) (Souter, J., concurring).  The Supreme

14

Court has defined the harmless-beyond-a-reasonable-doubt standard as no "'reasonable possibility' that trial error contributed to the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In this instance, petitioner presents nothing to show that the complained-of testimony was false or that the State knew it was false. Officer Schoelen testified that he commenced a search incident to petitioner's arrest, but allowed Officer Woods to continue with the search upon his arrival. Rep.'s R. at 127-28. Officer Schoelen also testified that "we f[ound] a clear plastic baggie containing 26 capsules of a white powder and another white rock substance in the baggie." *Id.* at 128. The testimony of the officer is not inconsistent with nor contrary to the testimony of Officer Woods or the documents which show that Officer Woods found the drugs. Absent a showing that presented testimony was false and that the State knew it was false, petitioner's due-process claim necessarily fails. This Court finds no prosecutorial misconduct related to the testimony of Officer Schoelen. There is no factual basis for petitioner's claim that the prosecutor knowingly suborned perjured testimony and failed to correct known false testimony. Even if the Court were to assume that Officer Schoelen testified falsely, the Court would find the alleged false testimony immaterial. The Court finds no reasonable probability that the alleged false testimony contributed to the verdict. This claim entitles petitioner to no habeas relief.

## V.  MENTAL COMPETENCY OF PROSECUTOR

In his third claim, petitioner contends that the prosecutor was not mentally competent to practice law because he suffered from a mental illness. (Am. Pet. at 7; Am. Supp. Mem. at 10-13.) Petitioner bases this claim solely on the prosecutor's suicide in the Spring of 2004. (*See* Am. Supp. Mem. at 10-13.)

Petitioner makes no relevant connection between his trial which ended in March 2003 and the prosecutor's suicide approximately a year later. Consequently, this claim entitles petitioner to no habeas relief. Conclusory allegations are insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

15

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial attorney rendered ineffective assistance when he failed to poll the jury after Juror Green became emotional upon announcement of the verdict.  (Am. Pet. at 8; Am. Supp. Mem. at 13-16.)

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial.  U.S. CONST., art. VI.  To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.  *Id.* at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  In addition, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the total-

16

ity of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

In this instance, petitioner alleges that his attorney rendered deficient representation by failing to individually poll the jury. However, "[a]bsent some indication that the jury's verdict was not unanimous, counsel did not perform deficiently by declining to poll the jury." *United States v. Ambo*, 64 Fed. App'x 416, 416 (5th Cir. 2003) (citing *United States v. Costa*, 691 F.2d 1358, 1363-64 (11th Cir. 1982)). In general, an attorney does not render deficient representation by failing to request individual polling of the jurors after a verdict has been announced and the jurors have "affirmed the verdict" upon a specific inquiry from the court. *Cross v. Johnson*, 169 F. Supp. 2d 603, 623 (N.D. Tex. 2001). Furthermore, when "nothing in the record of petitioner's trial . . . impl[ies] an irregularity in the verdicts that might have been uncovered by a jury poll", courts "attach little significance" to testimony "that several jurors were crying or shaking their heads when the verdicts were returned." *Siverson v. O'Leary*, 764 F.2d 1208, 1220 (7th Cir. 1985). Courts have observed that

> agreement with a verdict does not require pleasure in its announcement. A juror may display unhappiness with a verdict, or reluctance or sadness in its rendition, but still believe in its correctness. A juror may cry over a verdict in which he or she has participated without in any way evidencing disagreement with it. Few jurors relish a finding of guilty.

*United States v. Musto*, 540 F. Supp. 318, 342 (D.N.J. 1982) (quoted in *Siverson*). In general, "jurors' expressions of emotion are inherently ambiguous" and "jurors who were crying or shaking their heads at petitioner's trial might have been expressing emotion about [specifics] of the crime at issue rather than conveying uncertainty about . . . guilt." *Siverson*, 764 F.2d at 1220. Nevertheless, "[i]f other factors" are present "to raise suspicion about the integrity of the jury verdicts, then the manifestations of emotion by several individual jurors might fit into an overall picture indicating a reasonable possibility of compromised verdicts." *Id.*

The following facts in this case are undisputed: (1) the jury was deadlocked at approximately 4:00 p.m. on March 27, 2003; (2) at that time, no one on the jury thought further deliberations

would move the case closer to a verdict; (3) the trial court gave the jury additional instruction before returning them to their deliberations; (4) the jury requested to review certain testimony before being recessed for the evening at approximately 4:30 p.m. on March 27, 2003; (5) the jury announced a verdict at approximately 11:00 a.m. on March 28, 2003; (6) the jury foreman indicated that it was his verdict and that of the other jurors; (7)the trial court asked the jury members to raise a hand if the verdict was not their verdict, and no juror raised a hand; and (8) when the trial court asked counsel if they wanted to further poll the jury both attorneys affirmatively answered in the negative. These uncontested facts provide no basis for finding counsel deficient when he failed to request further polling of the jury.

In addition to those uncontested facts as shown by the trial record, petitioner alleges that his attorney witnessed Juror Green "weeping, shaking uncontrollably, and saying 'NO' when the foreman read the verdict of guilty." (Am. Supp. Mem. at 14.) He further alleges that his attorney alerted him to the abnormal behavior, but declined to poll the jury despite his request to "do something." (*Id.*) The affidavit of Green supports the allegation that she "was very emotional" and upset, but provides no indication that she expressed any specific disagreement with the verdict when the verdict was announced.

In light of the inherent ambiguity in expressions of emotion by jurors at the announcement of a verdict, the Court finds no deficiency of counsel in failing to request an individualized poll of the jurors in this case immediately after the trial judge had already polled the jurors. Counsel simply had no basis to expect that any juror – even the weeping one – would respond to the poll differently than they had just responded to the trial judge's poll.

Furthermore, the Court does not examine decisions of counsel through the distorting lens of hindsight. When the jury rendered a verdict in this case, counsel could not have known that Ms. Green was one of the two jurors holding out the day before from the verdict of guilty. At that time, he would not have known the matters stated within her affidavit. The affidavit is thus immaterial to the claim of ineffective assistance of counsel. Looking at counsel's actions at the relevant time

18

without the benefit of hindsight, the Court finds no deficiency of counsel from the failure to indi-

vidually poll the jurors.

In addition, petitioner has failed to carry the heavy burden imposed by 28 U.S.C. § 2254(d),

as interpreted by *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), to show that the state court deter-

mination of his ineffective assistance claim was based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding or that such decision was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States.

For all of these reasons, this claim entitles petitioner to no habeas relief.

## VII. JUROR MISCONDUCT

In his fifth claim, petitioner asserts that the jury foreman engaged in misconduct by falsely

reporting a unanimous verdict. (Am. Supp. Mem. at 16-17.)  He argues that the Texas Court of

Criminal Appeals made an unreasonable decision regarding the alleged juror misconduct that is not

supported by the record. (*Id.* at 16.)  He further argues that the court of appeals did not address this

claim on direct appeal. (*Id.*)

Although Texas requires a unanimous verdict in a felony criminal case, *see* TEX. CONST.

ART. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 2006), neither the United

States Constitution nor any law of the United States mandate a unanimous verdict in a State

criminal action, *see Apodaca v. Oregon*, 406 U.S. 404, 412 (1972); *Johnson v. Louisiana*, 406 U.S. 356,

363 (1972); *United States v. Correa-Ventura*, 6 F.3d 1070, 1077 n.11 (5th Cir. 1993) (recognizing that

a unanimous jury "was not considered to be grounded deeply enough in the Constitution to require

its imposition upon the fifty states through the Fourteenth Amendment").  Federal habeas relief

cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right

secured to him or her by the United States Constitution or the laws of the United States." *Orellana*

*v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  The courts entertain federal petitions under § 2254 "only

on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties

19

of the United States." *See* 28 U.S.C. § 2254(a).  The alleged juror misconduct does not make petitioner's incarceration violative of the Constitution or laws or treaties of the United States. Accordingly, the claim of juror misconduct entitles petitioner to no habeas relief.

In Claim 5, petitioner also seems to claim that the State failed to protect his State constitutional rights when the court of appeals failed to address a claim related to the unanimity of the jury.  "[W]hen a state guarantees a structural protection, it violates the Due Process Clause of the federal Constitution if it fails meaningfully to vindicate that guarantee." *Hoover v. Johnson*, 193 F.3d 366, 370 (5th Cir. 1999) (citing U.S. CONST. Amend. XIV; *Evitts v. Lucey*, 469 U.S. 387, 400-01 (1985) (holding that because Kentucky allowed criminal appeals, it was required to administer them in a manner consistent with federal Due Process Clause)).  The Fifth Circuit assumed "*arguendo* only, that this principle applies outside the context of *Evitts* and related cases", and thus stated that "the only federal question is to determine whether Texas, having guaranteed the right to a unanimous verdict, has so deviated from that guarantee as to have denied federal due process of law." *Id.*

In this instance, notwithstanding petitioner's allegation to the contrary, the State court of appeals addressed both claims raised on direct appeal. *See Washington v. State*, No. 11-03-00153-CR, 2004 WL 212851, at *1 (Tex. App. – Eastland Feb. 5, 2004, pet. ref'd).  The trial court, furthermore, heard arguments regarding the alleged lack of unanimity when it considered and denied the motion for new trial.  *See* Rep.'s R. (Mot. for New Trial) at 4.  As the Fifth Circuit ultimately concluded in *Hoover*, "[t]here is no reason, under these facts, to think that, under 'established Federal law, as determined by the Supreme Court of the United States,' Texas has withdrawn any right at all or has failed to vindicate its unanimous-jury guarantee in any respect." 193 F.3d at 370.  To the extent that petitioner claims that the State violated his due process rights with respect to vindicating his State constitutional right to a unanimous jury, this claim entitles him to no federal habeas relief.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 16th day of February, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21